UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA

In re:

Kenneth W. Dykes and Jennifer L. Dykes,  Case No.: 10-04727

    *Debtors*.

# ORDER SUSTAINING OBJECTION TO DEBTOR'S MOTION TO AMEND SCHEDULES AND MOTION TO AMEND PLAN

Linda Marston-Crawford, Attorney for the Debtors, Mobile, AL
Angela Cooper, Attorney for MJ Rentals, Mobile, AL

This matter is before the Court on MJ Rentals' Objection to the Debtor's Motion to Amend Schedules and Motion to Amend Plan. The Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(1), and the Court has authority to enter a final order. For the following reasons, the Objection to the Debtor's Motion to Amend Schedules and Motion to Amend Plan is due to be SUSTAINED.

## FACTS

The Debtors filed a voluntary chapter 13 petition on October 11, 2010. On December 20, 2010, the Debtors amended their schedules as follows: Schedule B was amended to include a storage building valued at $1,582.00, Schedule C was amended to include the storage building as property claimed as exempt, and Schedule D was amended to include MJ Rentals, LLC as a creditor holding a secured claim valued at $1,582.00 (with an unsecured portion of $1,582.00). The Debtors also filed an Amended Chapter 13 Plan in which they proposed to pay MJ Rentals, LLC $16.00 a month as preconfirmation adequate protection payments. On December 27, 2010,

1

MJ Rentals filed an Objection to Confirmation of the Amended Plan arguing that the Debtors' plan is not feasible, is not filed in good faith, and does not make provisions for the "lease agreements" they have with MJ Rentals regarding the storage building. The Debtors' Motion to Amend Schedules and Motion to Amend Plan were heard before this Court on February 9, 2011. At the hearing, MJ Rentals objected to the Motions to Amend Schedules and Plan.

MJ Rentals put into evidence the "Lease Agreement / Purchase Agreement" dated March 2, 2010, signed by Jennifer Dykes. The Agreement is for the lease-purchase of a used "10412 Barn." The material provisions of the Agreement are as follows:

1. Ownership of the property can be obtained in one of two ways. First, If the Lessee elects to purchase by making a cash payment, then an amount equal to 60% of all previously paid rental payments (less unpaid charges or late fees) shall be deducted from the stated cash sales price of $1,600.00 and ownership shall pass to the lessee. Second, the Lessee can acquire ownership by making 36 consecutive monthly payments for a total of $2,666.16. The term of the lease is one month and all first payment defaults are terminated on the last day of the month in question. The lease is renewed on a monthly basis when the lessee makes the next month's payment.
2. The Lessee must provide a $100.00 cash security deposit.
3. The Lessee can terminate the lease at any time, without penalty, by voluntarily surrendering the property upon the expiration of any lease term.
4. In the event of lease termination, the Lessee must make all rental payments up to that point in a timely manner.
5. The Lessor can terminate the lease for the Lessee's failure to make payment and then has the right to possession.
6. The laws of the State of Kentucky shall govern the contract in all respects and the Lessee agrees to submit to the jurisdiction of the Courts of Kentucky.

At the hearing, Jessica Dykes testified that she is a realtor in Citronelle, Alabama. She, her husband, and their two children live in a 1500 square foot house. They use the storage building in question for storage of excess household goods, lawn maintenance equipment, and realty signs. She testified that she understood when she signed the Agreement that she did not own the shed until it was fully paid for. At the conclusion of the hearing, the Court took the matter under advisement.

## LAW

Under 11 U.S.C. § 365, a debtor, with the Court's approval, may either assume or reject any executory contract or unexpired lease to which the debtor is a party. 11 U.S.C. § 365(a). The Bankruptcy Code does not define "executory contract," but the legislative history of § 365 indicates that Congress intended the term to mean a contract in which performance is due to some extent on both sides. *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 522 n.6, 104 S.Ct. 1188, 1194 n.6, 79 L.Ed.2d 482 (1984). Property interests in bankruptcy are created and defined by state law so it is necessary to determine which state law applies here. *See, e.g. Butner v. United States, et al.*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). In this case, the contract in question states that it is to be governed by Kentucky law.

Kentucky Revised Statute § 367.976 defines a "rental-purchase agreement" as an agreement for the use of personal property for personal, family, or household purposes for an initial period of four months or less, that is automatically renewable with each payment, and that permits the consumer to become the owner of the property. KY. REV. STAT. ANN. § 367.976(7) (West 2010). In this case, the contract is for the use of personal property for family/household purposes, the term of the initial period of the contract is one month, the contract is automatically renewed each time a payment is made, and the contract contains two provisions that provide for the consumer to become the owner of the property. This contract clearly fits within the definition "rental-purchase agreement" under Kentucky statute § 367.976. Kentucky courts have held that a rental-purchase contract is neither a "true lease" nor a "security instrument," but is sufficiently executory to fall within § 365 of the Bankruptcy Code. *In re Knowles*, 253 B.R. 412, 415 (Bankr. E.D. Ky. 2000); *see also In re Williams*, 2007 WL 1875652, *3 (Bankr. W.D. Ky.).

3

This Court finds that, under Kentucky law, the Debtors' lease-purchase agreement should be considered executory and thus falls within the 11 U.S.C. § 365. The contract must be assumed or rejected in accordance with the statute. Therefore, the Objection to the Debtor's Motion to Amend Schedules and Motion to Amend Plan are SUSTAINED. The Debtors shall be given 30 days from the entry of this order in which to modify their plan accordingly.

Dated: February 14, 2011

/s/ Margaret A. Mahoney
MARGARET A. MAHONEY
CHIEF U.S. BANKRUPTCY JUDGE